UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WAYNE ROSE,

               Plaintiff,

Case No. 1:05-CV-713

v.

Hon. Richard Alan Enslen

MEIJER LONG-TERM
DISABILITY PLAN and
MEIJER, INC., as Plan Administrator,

               Defendants.

**OPINION**

_____/

      This matter is before the Court on Plaintiff Wayne Rose's Motion for Judgment on the Administrative Record.  This is an action for benefits brought pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  Plaintiff is seeking recovery of long-term disability benefits ("LTD") provided by his former employer, Defendant Meijer, Inc. ("Defendant").  Plaintiff originally sought class-wide relief, alleging a scheme created by Defendants to deny employees benefits under the Meijer Long- Term Disability Plan ("the Plan") by classifying its employees as hourly employees and then denying them benefits after such classification because only salaried employees are eligible for long-term benefits under the Plan.  Plaintiff has since withdrawn this request.

**I.     BACKGROUND**

      As of the beginning of 2004, Defendant eliminated from its employment some 2,000 Team Leaders countrywide.  (Administrative Record ("AR") 237-38.)  Plaintiff, at the time of the restructuring, was a salaried employee classified as a Team Leader.  (AR 1.)  On January 23, 2004, Plaintiff signed an "Unassigned Team Leader Agreement" ("Agreement") whereby he agreed that he

would remain "unassigned" for no more than one year.  Team Leaders who did not execute the Agreement were terminated from employment.  (AR 237.)  Under the Agreement, Plaintiff had the responsibility to apply for positions and "pay, schedule, benefits, etc., will be adjusted to be commensurate with the position they attain." (AR 1.)  The Agreement stated that if Plaintiff did not obtain a position within one year, Defendant would place him in a position, which might not be a leadership position, and the benefits, salary and schedule of Plaintiff would commensurate to that position.  (*Id*.)  Further, if after the conclusion of the one year time period, Plaintiff did not secure a position himself, or accept the offered placement by Defendant, his employment would be terminated. (*Id*.)

Plaintiff was offered the position of Grocery Team Leader in August 2004, which he declined. (AR 42.)  In October 2004, Plaintiff went on short-term disability as a result of hip injuries related to a 1995 car accident.  (AR 12, 22.)  In the medical statement regarding the disability, Dr. Bernard Roehr recommended the following restrictions, "Twenty hr. work week with sit/stand option."  (AR 3.)  Dr. Roehr stated that Plaintiff's "restrictions are permanent and [] [they are] not expected to change."  (AR 4.)  Plaintiff was offered the position of Greeter in November 2004, as  a position which would meet his physical restrictions.  (AR 5-6.)  Plaintiff requested time to discuss the return to work with his physician.  (AR 9.)  After that consultation, Dr. Roehr submitted a new medical statement indicating that Plaintiff was completely disabled.  (AR 8, 9.)

On January 6, 2005, Plaintiff underwent an Independent Medical Examation to determine his level of disability.  (AR 17.)  Dr. James R. Ellis diagnosed Plaintiff as having permanent limitations and stated that "He may be able to work in a sedentary job but he will need to get up and move about

every 15 to 30 minutes . . . . it is unlikely that he will be able to sustain most types of employment and he would appear to be a good candidate for a Social security Disability situation."  (AR 22-24).

On January 28, 2005, Plaintiff was again offered the position of Greeter, an hourly position, to accommodate his permanent work restrictions. (AR 28.)  Plaintiff was also informed that his short-term disability would cease on January 28, 2005.  (*Id*.)  Plaintiff sought a week vacation such that he could return to work on February 8, 2005.  (AR 31.)  On February 8, 2005, Defendant sent Plaintiff a letter explaining that as a Greeter, he would not be eligible for LTD benefits.  (AR 32.) Plaintiff reported for work as a Greeter but was unable to work due to his disability and left after a short time.  (AR 35.)  Plaintiff sent a letter to Defendant on February 16, 2005, indicating his expectation to be placed on LTD.  (AR 37.)  In response, Defendant sent another letter, dated February 25, 2005, which indicated, pursuant to the Agreement, Plaintiff had until January 31, 2005 to secure a position or be placed in one within the company.  (AR 41.)  Further, Plaintiff had previously turned down a position in August 2004, and was offered the position of Greeter on January 28, 2005.  (*Id*.) Defendant stated if Plaintiff did not return to work as a Greeter per the schedule, he would be terminated from employment.  (*Id*.)

On March 4, 2005, counsel for Plaintiff contacted Defendant and indicated Plaintiff would return to work as a Greeter but specified such a position should be interpreted as "recuperative employment" rather than a permanent position and Plaintiff would be seeking LTD benefits.  (AR 44-45.)  On April 4, 2005, counsel for Plaintiff contacted Defendant stating Plaintiff had not been able work as a Greeter due to his disability and requesting LTD benefits.  (AR 48.)  Defendant responded by letter, denying the LTD benefits for the reason LTD benefits are only available under the Plan for salaried employees who had been totally disabled for six months.  (AR 53.)  Plaintiff, in his permanent

3

position as a Greeter, was an hourly employee and had only been on STD for four months.  (*Id*.)

Plaintiff appealed the denial of LTD benefits on June 28, 2005.  (AR 62-64.)  That appeal was denied

and this litigation followed.  (AR 86.)

## II.     LEGAL STANDARDS

A challenge under § 1132(a)(1)(B) to the denial of benefits is to be reviewed under an arbitrary

and capricious standard where the plan gives the administrator or fiduciary discretionary authority to

determine benefits.  *Firestone Tire & Rubber v. Bruch*, 498 U.S. 101, 115 (1988); *see also Wilkins v.*

*Baptist Healthcare Sys.,* 150 F.3d 609, 613 (6th Cir. 1998); *Borda v. Hardy, Lewis, Pollard & Paige,*

*P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998).  As the Supreme Court reasoned,

> the validity of a claim to benefits under an ERISA plan is likely to turn on the
> interpretation of terms in the plan at issue.  Consistent with established principles of
> trust law, we hold the plan is to be reviewed under a *de novo* standard unless the benefit
> plan gives the administrator or fiduciary discretionary authority to determine eligibility
> for benefits or to construe the terms of the plan.

*Id*.  Decisions of an administrator or fiduciary of the plan "must be upheld under the [arbitrary and

capricious standard], if 'rational in the light of the plan's provisions.'"  *Borda*, 138 F3d at 1066,

*quoting Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991); *see also Marquette Gen.*

*Hosp. v. Goodman Forest Indus.*, 315 F.3d 629, 632 (6th Cir. 2003).  Such a deferential review, is not

"*no* review."  *McDonald v. Western-Southern Life Ins. Co*., 347 F.3d. 161, 172 (6th Cir. 2003) (citation

omitted).  Under an arbitrary and capricious review standard, a court will uphold the administrator's

decision "if it is the result of a deliberate, principled reasoning process and if it is supported by

substantial evidence."  *Glenn v. Metro. Life Ins. Co*., 461 F.3d 660, 666 (6th Cir. 2006) (citation

omitted).

4

As previously decided by the Court in an Opinion and Order of October 11, 2006, the Plan at issue in this action is such a discretionary plan.  Therefore, the arbitrary and capricious standard is appropriate in this action.

## III.   DISCUSSION

A. Whether the Decision to Deny Plaintiff Long-term Disability Benefits was Arbitrary and Capricious

Plaintiff argues that Defendant's decision to deny Plaintiff LTD benefits under the Plan was arbitrary and capricious and therefore merits reversal.  The Plan language states a participant is no longer eligible for LTD plan coverage "the day of the month after you transfer to an employment classification not covered by this LTD plan." (AR 181.)  Plaintiff appears to argue that because he did not choose to change his status to hourly, the above clause does not prohibit him from obtaining LTD benefits.[1]

The Court finds Plaintiff's argument is misplaced.  First, Plaintiff agreed, by executing the Agreement, that he would be responsible for obtaining a position in the Company within one year.  Plaintiff failed to do so.  As a result, pursuant to the Agreement, Defendant had a duty to place Plaintiff in another position but was under no duty to place Plaintiff in a salaried position.  Defendant placed Plaintiff in a position which complied with his physical restrictions, the hourly Greeter position.  As a result of the change of status from a salaried to hourly employee, Plaintiff became ineligible for LTD

---

[1]Plaintiff also makes an argument premised on Plaintiff's receipt of six months of STD benefits.  Under Section 4.1, "A Totally or Partially Disabled Participant is eligible to begin receiving Disability Benefits on the day after he satisfies the Qualifying Period.  The Qualifying Period is equal to the Equivalent of six consecutive months."  (AR 206.)  However, after a review of the Administrative Record, it is apparent Plaintiff only received four months of benefits.  (*See* AR 32, 41, 42, & 104.)

benefits.  Section 3.1 of the Plan, addressing eligibility, states: "All Team Members who are classified by the Company as Salaried Team Members are eligible to participate in the Plan."  (AR 205.) Further, under Section 3.4(b) of the Plan, "A Team Member will cease to be a participant in the Plan on the first day of the calendar month following his transfer to an employment classification which is not eligible to participate in the Plan."  (*Id*.)  Defendant determined that Plaintiff was an hourly employee in February 2005, making him ineligible for LTD benefits under the plain language of the Plan.  This decision is rational in light of the Plan's plain language.  *Borda*, 138 F.3d at 1066.

To the extent Plaintiff asserts his hourly position was recuperative employment under the Plan, and therefore his accrual of time toward completion of the qualifying period did not stop, such an argument fails.  Under the Summary Plan Description and the Plan itself, recuperative employment is defined as temporary.[2]  In this case, Plaintiff was offered the Greeter position as a permanent position. (AR 28.)  Therefore, because Defendant's decision to deny LTD benefits on the basis of eligibility was rational and supported by substantial evidence in the record, the decision was neither arbitrary nor capricious and will be upheld.

B. Procedural Violations of ERISA

Plaintiff claims Defendant committed a multitude of procedural violations of ERISA and its regulations, in connection with this claim.  As a result, Plaintiff asserts he is entitled to a reversal of the administrative determination and additional relief, including discretionary civil penalties pursuant to 29 U.S.C. § 1132(c).

---

[2]The Summary Plan Description states, "It is important to remember that a recuperative arrangement cannot be permanent in nature."  (AR 182.)

6

1. Disclosure Requirements

Plaintiff alleges Defendant failed to conform to technical disclosure requirements pursuant to 29 U.S.C. § 1133 as codified in 29 C.F.R. § 2560.503 and as a result, Plaintiff was denied due process as required by statute.  Under § 503, every employee benefit plan shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision for denying the claim.

29 U.S.C. § 1133.  The regulations specify that a notification of adverse benefit termination should include the specific reason for the determination and reference the plan provisions on which such a decision is based.  29 C.F.R. § 2560.503-1(B)(4)(g)(i-ii).  Further, the notification should also include any additional information necessary for the participant to perfect the claim and a description of the review procedures and time limits.  29 C.F.R. § 2560.503-1(B)(4)(g)(ii-iv).

"An administrator's failure to comply with the ERISA procedural requirements can result in a remand from the reviewing court to the administrator."  *Moore v. Lafayette Life Ins*., 458 F.3d 416, 436 (6th Cir. 2006); *see also VanderKlok v. Provident Life & Accident Ins. Co*., 956 F.2d 610, 619 (6th Cir. 1992).  The Sixth Circuit Court of Appeals has adopted "the rule that administrators need only substantially comply with these ERISA notice requirements in order to  avoid remand."  *Moore*, 458 F.3d at 436 (citing *Kent v. Omaha*, 96 F.3d 803, 807 (6th Cir. 1996)).  Defendant argues that although its letter of denial did not contain all the elements required under the regulations, it was in substantial compliance.[3]

---

[3]Defendant's letter of denial, dated April 8, 2005, states:

To determine whether there is substantial compliance, the Court must consider all of the communications between Defendant and Plaintiff and ascertain if "information provided was sufficient under the circumstances." *Id*. The Sixth Circuit has found that "[w]hen claim communications as a whole are sufficient to fulfill the purposes of Section 1133[,] the claim decision will be upheld even if a particular communication does not meet those requirements." *Kent*, 96 F.3d at 807. Further, "courts have recognized in ERISA cases that procedural violations entail substantive remedies only when some useful purpose would be served." *Id*.

In examining all of the communications between Plaintiff and Defendant, it is clear that Defendant was in substantial compliance with the disclosure requirements. In three different letters sent to Plaintiff, the reason for denial was set forth, stating Plaintiff failed to meet the eligibility requirements under the LTD plan because Plaintiff was classified as an hourly employee. (*See* AR 41, 53, & 86.) Plaintiff was also clearly afforded an appeal process in which Plaintiff failed to address or offer any evidence regarding the stated reason for denial – hourly-employee status. In *Kent*, the defects in claim procedure did not warrant a remand when such a remand would be a useless formality. *Kent*, 96 F.3d at 807. In the instant case, such a remand would also be fruitless. Plaintiff has not presented any evidence that he was denied the opportunity to present evidence or prevented from undertaking an administrative appeal.

---

We received a letter from your attorney, Christopher Morris, regarding LTD benefits. LTD is a benefit offered only to salaried Meijer team members who have been totally disabled for six months. On February 8, 2005, after four months of disability, you were permanently placed into an hourly team member position. As an hourly team member you do not meet the eligibility requirements for LTD benefits, therefore, that benefit is not an opinion for you.

(AR 53.)

"In this analysis, the Court asks whether the plan administrators fulfilled the essential purpose of § 503 – notifying Plaintiff of their reasons for denying his claims and affording him a fair opportunity for review." *Moore*, 458 F.3d at 436.  In this case, both objectives were completed. Plaintiff was apprised of the reason he was denied LTD benefits, and through his attorney he filed an appeal which was fully reviewed.  Therefore, Plaintiff's claim of a due process violation fails.

        2. Independent Review

Plaintiff claims Defendant committed a procedural violation when it failed to follow the procedures for a proper appeal.  Plaintiff asserts Defendant failed to have an "appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is subject of the appeal nor subordinate of such individual . . ."  29 C.F.R. § 2560.503-1(h)(3)(ii). Plaintiff argues that because Cheryl Visscher denied LTD benefits initially and also signed the letter denying the appeal from that determination, a violation occurred.  (*See* AR 53 & 86.)

Defendant has submitted affidavits from Cheryl Visscher and her supervisor, Monika Kaminski to rebut this claim.  (AR 235-36 & 239-40.)  These affidavits attest to the fact that although Ms. Visscher signed the denial of appeal letter, she did not herself review the claim.  (AR 235 at ¶ 4.) Rather, her supervisor, and therefore not her subordinate, reviewed the appeal and instructed Ms. Visscher to merely write the correspondence.  Ms. Kaminski attests to the same in her own affidavit. (AR 239 at ¶ 3.)  Plaintiff has submitted no evidence to contradict these affidavits.  As a result, the Court finds Plaintiff has failed to show that such a procedural violation occurred and this claim is denied.

Plaintiff further asserts Defendant violated ERISA by allowing Ms. Kaminski to review the appeal because she is not a properly named fiduciary of the plan.  29 C.F.R. § 2560.503-1(h)(3)(ii)

("Provide for a review . . . by an appropriate named fiduciary of the plan").  Plaintiff relies on Ms. Kaminski's title of "Disability Management Supervisor" to support this claim as well as her inability to articulate at a deposition the proper standard of review.  Under the Plan, Defendant was given discretionary authority to "delegate specific responsibilities for the operation and administration of the Plan to Team Members or agents."  (AR 220-21.)  Defendant argues that Ms. Kaminski was such a Team Member or agent, delegated the responsibility to review Plaintiff's appeal.  Defendant relies on the affidavit of Wendell Martin, a Disability Management Services Manager, and Ms. Kaminski to support this claim.  (*See* AR 233-34 & 239.)  Both Mr. Martin and Ms. Kaminski attest to the fact that Ms. Kaminski had been delegated specific responsibilities pursuant to the Plan.[4]  The Court finds, in light of the discretionary language in the Plan and the uncontradicted affidavits, Plaintiff's claim that Ms. Kaminski was not a properly named fiduciary of the plan will fail.

### 3. Document Request

Plaintiff argues Defendant failed to furnish requested information as required when Defendant did not produce all the documents it relied on, considered or generated in the making of its determination. 29 C.F.R § 2560.503-1(h)(2)(iii) and (m)(8). Defendant argues that it supplied Plaintiff with most of the requested documents, such as a Summary Plan Description, all communications with Plaintiff, the medical records in its possession, and the name and address of the Plan Administrator, and that no further document requests were made.  (AR 90.)

---

[4] To the extent Plaintiff appears to argue the Plan required an Administrative Committee to be formed, such a claim is not valid.  Under the Plan, such a Committee "*may* delegate any or all of its duties as Plan Administrator to an Administrative Committee."  (AR 221) (emphasis added).  Nowhere in the Plan was the appointment of an Administrative Committee a mandatory action; rather such a committee *could* be created at Defendant's discretion.  Further, Defendant has made no claim that an Administrative Committee was selected.

Upon review of the documents produced by Plaintiff, the Court finds that not all of the documents now found in the Administrative Record were produced by Defendant in August 2005. However, Defendant did produce most of those documents requested by Plaintiff.  Further, and most fatal to Plaintiff's claim of a procedural violation, Plaintiff has failed to allege any prejudice which resulted from not receiving these documents (such as the Change of Status record (AR 102-13) or the surveillance report (AR 58-60)).  Under ERISA, failure to respond to an information request may result in penalties; however, such penalties are not mandatory.  29 U.S.C. § 1132 (c).  The decision to award such penalties is in the discretion of the court.  29 U.S.C. § 1132(c).  "Courts may consider any prejudice or lack thereof in deciding whether 1132(c) penalties are warranted."  *Moore*, 458 F.3d at 437 (citing *Bartling v. Fruehauf*, 29 F.3d 1062, 1068 (6th Cir. 1994)).  In the present case, Plaintiff has not alleged that failure to produce certain documents hindered his presentation of his case, or his ability to bring a lawsuit.  Therefore, the Court finds that Plaintiff has suffered no prejudice.

After review, the Court, in its discretion, finds Plaintiff is not entitled to discretionary civil penalties as a result of the failure of Defendant to forward certain documents.  Plaintiff has failed to demonstrate any prejudice as a result of the failure.  Therefore, Plaintiff's request will be denied.

## IV.   CONCLUSION

Therefore, the Court finds Defendant's decision to deny Plaintiff LTD benefits was not arbitrary and capricious and will be upheld.  Further, the Court finds Plaintiff's claims of procedural violations of ERISA fail and Plaintiff's request for civil penalties under 29 U.S.C. § 1132(c) will be denied.

A Judgment consistent with this Opinion shall issue.

DATED in Kalamazoo, MI:
January 22, 2007

/s/ Richard Alan Enslen
RICHARD ALAN ENSLEN
SENIOR UNITED STATES DISTRICT JUDGE

11